1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mark W. Lapham, Esq.
**LAW OFFICES OF MARK W. LAPHAM**  (SBN 146352)
751 Diablo Rd.
Danville, CA 94526
Tel:   (925) 837-9007
Fax:  (650) 738-0375

Attorney for Plaintiff,
PENNY SLINGER HILLS

# UNITED STATES DISTRICT COURT

## FOR NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PENNY SLINGER HILLS, an individual | Case No.: |
| Plaintiff, | **VERIFIED COMPLAINT FOR** |
| v. | **(1) WRONGFUL FORECLOSURE;**<br>**(2) QUIET TITLE;** |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation; CITI, a New York Corporation, ITS SUCCESSORS AND ASSIGNS; NATIONAL DEFAULT SERVICING CORPORATION, an Arizona Corporation, as Trustee for BANK OF NEW YORK as Trustee for the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-24A; and DOES 1 through 50, inclusive, | **(3) FRAUD BY DECEIT;**<br>**(4) CANCELLATION OF WRITTEN INSTRUMENTS (NOTE & DOT, ADOT 2, ADOT3 AND ADOT4, NOD2, SOT1 AND SOT2);**<br>**(5) QUASI-CONTRACT FOR RESTITUTION BASED ON UNJUST ENRICHMENT;**<br>**(6) BUSINESS AND PROFESSIONS CODE § 17200, et seq. (Fraud Claims); and**<br>**(7) DECLARATORY RELIEF** |
| Defendant(s). | **DEMAND FOR TRIAL BY JURY** |

Pursuant to the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), PENNY SLINGER

HILLS, hereinafter "Plaintiff," sues MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,

INC., a Delaware Corporation; CITI, a New York Corporation, ITS SUCCESSORS AND

ASSIGNS; NATIONAL DEFAULT SERVICING CORPORATION, an Arizona Corporation as

1

Trustee for BANK OF NEW YORK as Trustee for the STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-24A; and DOES 1 through 50, inclusive, hereinafter collectively referred to as "Defendants," for Wrongful Foreclosure, to Quiet Title, for Fraud by Deceit, Cancellation of Instruments (Note and Deed of Trust, ADOT2, ADOT3, ADOT4, NOD2, SOT1 and SOT2), for Quasi-Contract For Restitution Based On Unjust Enrichment, for violation of the California Business & Professions Code, §17200 *et seq* and for Declaratory Relief.  Plaintiff seeks to enjoin Defendants to rescind the Note and Deed of Trust, as well as the ADO2 and all subsequent documents predicated on said ADOT2, including the Notice of Default (NOD2), ADOT3, ADOT4, SOT1 and SOT2, relating to the Subject Property, and restitution for mortgage payments and fees and costs improperly collected by Defendant CITI from Plaintiff.

## I.   <u>DEMAND FOR JURY TRIAL</u>

Pursuant to the Seventh Amendment to the Constitution of the United States of America, and under Article I, Section 16 of the California Constitution, Plaintiff is entitled to, and hereby demands, a trial by jury.

## II.   <u>JURISDICTION AND VENUE</u>

1.      This is action is filed for the purpose of quieting the title to Plaintiff's real property. Plaintiff's position is that none of the defendants have any right to claim an interest in Plaintiff's real property by virtue of the fact that none of them own or owned, or is or was, a holder in due course of the Promissory Note (hereinafter "Note") while simultaneously being the beneficiary of the Deed of Trust (hereinafter "DOT") on Plaintiff's real property that secures the Note. The course of conduct undertaken by the defendants has created a cloud on Plaintiff's real property such that Plaintiff's only remedy is to bring this legal action in order to remove these clouds on title.

2.      This is also an action to terminate, cancel and invalidate the illegal and unlawful attempted foreclosure process affecting Plaintiff's unique real property and to prevent the Defendants from transferring property ownership or title through a wrongful and illegal foreclosure sale, and subsequently taking possession or evicting Plaintiff from possession of Plaintiff's property.

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.        Verified Complaint

3.      Plaintiff is informed and believes and thereon alleges that the amount in controversy exceeds $75,000.00 and there is complete diversity among the parties to this case.

4.      Plaintiff is informed and believes and thereon alleges that this court has jurisdiction under the provisions of 28 U.S.C. § 1332 [Diversity Jurisdiction].

5. Venue is proper because the subject property, which is the focus of said civil action, is located within the United States District Court Northern District jurisdiction.

## III.  PARTIES

6.      Plaintiff is informed and believes and thereupon alleges that Defendants, and each of them, claim an interest in Plaintiff's property adverse to Plaintiff herein. Plaintiff is and was at all times material hereto a resident of the County of Santa Cruz, State of California, and the owner of the subject property of this action, which is located at 910 Harmon Gulch Road, Boulder Creek, California 95006 with A.P.N. 089-091-24 (the "Property.") and whose legal description is:

PARCEL I:
A portion of the land conveyed to Frank W. Roeckner et ux, by deed recorded February 6, 1946 in Volume 528, Page 418, Official Records of Santa Cruz County, and more particularly described as follows:

Beginning at a 1-1/2 inch pipe at the intersection following a 20 foot road (known as Harmon Gulch Road) with the East-West ¼ section line running through Section 16, T. 9 S., R. 2 w., M.D.B. & M., as shown upon the Record of Survey Map filed for record February 19, 1965, in Map Book 43, Page 14, Santa Cruz County Records; thence from said point of beginning along the centerline of said road the following courses and distances: North 39º 41' 07" West 85.55 feet to a ¾ inch pipe; North 71º 03' 52" West 98.65 feet to a ¾ inch pipe; North 80º 04' 50" West 79.51 feet to a ¾ inch pipe; North 68º 20' 17" West 149.52 feet to a ¾ inch pipe; North 17º 52' 59" West 128.21 feet to a ¾ inch pipe; North 54º 16' 44" West 174.77 feet to a ¾ inch pipe; South 88º 32' 04" West 80.08 feet to a ¾ inch pipe; North 50º 27' 0" West 112.09 feet to a ¾ inch pipe and North 39º 33' 48" West 99.74 feet to a ¾ inch pipe; thence leaving said road North 39º 33' 48"  West 90.25 feet to a ¾ inch pipe at the most Southerly corner of the lands conveyed to N.E. Hamilton, et ux, by deed recorded in Volume 1625, Page 412, Official Records of Santa Cruz County; thence along the Southeasterly line of said lands of Hamilton North 49º 22' 17" East 275.30 feet to a 3/4 inch pipe and North 20º 02' 17" East 825.80 feet to a ¾ inch pipe at the most Easterly corner thereof; thence leaving said last named lands along the Northeasterly line of said lands of Roeckner South 55º 17' 43" East 1435.60 feet to an axle at the Northeasterly corner thereof on the North-South ¼ Section line running through said Section 16; thence along said ¼ Section line South 1º 16' 50" East

708.40 feet to a 1-1/2 inch iron pipe at the center of said Section 16; thence along the East-West ¼ Section line running through said center South 89º 25' 03" West 854 feet to the point of beginning.

Parcel II:
A right of way, described as being "over said Harmon Gulch Road" and "the same right of way as set out in the deed to Minnie E. Peterson, recorded in Volume 407, Page 479, Official Records of Santa Cruz County."
Said right of way is the same as was first reserved to Frank W. Roeckner, et ux by Instrument recorded August 23, 1965, in Book 1713, Page 464, Official Records of Santa Cruz County, as appurtenant to the land described as Parcel I hereinabove, and other land.

Assessor's Parcel Number: 089-091-24
NOTE: Parcel II herein described is only being included so as to avoid the Company being the cause of excluding it from deeds or encumbrances, but NO INSURANCE is to be provided as to said parcel.
Anything to the contrary in the policy or endorsements thereto notwithstanding, said parcel is NOT INSURED even though it may be included as part of the description of the land described or referred to in the policy.
The Company requires that the insured(s) acknowledge in writing that they understand this.
Should a request, however, be made for insurance in this regard, it must be referred to the Title Department for an appropriate response.

7.     Defendants have begun the foreclosure process on Plaintiff's property without any basis in law or in equity, and said Defendants have no legal or equitable right, claim, or interest in said property by virtue of the fact that none of them own or owned, or is or was, a holder in due course of the Note, while simultaneously being the beneficiary of the Deed of Trust ("DOT"). Plaintiff therefore seeks a declaration that the title to the subject property is vested in Plaintiff alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein. This suit also seeks to enjoin, cancel and reverse the foreclosure process of Plaintiff's unique property.  Defendants have initiated a non-judicial foreclosure proceeding against Plaintiff's home that is not in compliance with California law.

8.     At all relevant times, Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (hereinafter, "MERS") is a corporation incorporated in Wilmington, Delaware,

with its principal place of business in Reston, Virginia that operates an electronic registry and owns no property or has no interest in any matter set out in this Verified Second Amended Complaint (hereinafter, "SAC"). The governing documents and membership agreement with MERS and Defendants indicate that MERS is prohibited from having an ownership/beneficiary interests in the property, note or deed of trust. MERS is named the original *nominee* beneficiary under the DOT dated June 15, 2007 holding only legal title, which is the subject of this Complaint. MERS' registration status with the California Secretary of State was suspended from May 21, 2002 to July 21, 2010.

9. At all relevant times, Defendant CITIMORTAGE, INC. ("CITI") is a New York corporation licensed to do business in the State of California with its principal place of business located at 1000 Technology Drive, O'Fallon, Missouri 63368. Plaintiff believes and thereon alleges that at all relevant times, CITI has transacted and continues to transact business throughout the State of California, including Santa Cruz County, is and was engaged in the business of mortgage lending/servicing/transacting in California.

10. At all relevant times, Defendant NATIONAL DEFAULT SERVICING CORPORATION ("NDSC") is a foreign corporation licensed to do business in the state of California with its principal place of business located at 7720 N. 16th Street, Suite 300, Phoenix, Arizona 85020. Plaintiff believes and thereon alleges that at all relevant times, National Default Servicing Corporation has transacted and continues to transact business throughout the State of California, including Santa Cruz County, is and was engaged in the business of mortgage lending/servicing/transacting in California.

11. The true names and capacities, whether individual, corporate (including officers and directors thereof), associate or otherwise of Defendants sued herein as DOES 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff is informed, believes and herein alleges that each Defendant designated as a DOE defendant is involved in or is in some manner responsible as a principal, beneficiary, agent, dual agent, co-conspirator, joint venture, alter ego, third party beneficiary, or otherwise, for the

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.       Verified Complaint

agreements, transactions, events and/or acts hereinafter described, and thereby proximately caused injuries and damages to Plaintiff.

12.     Plaintiff requests that when the true names and capacities of these DOE Defendants are ascertained, they may be inserted in all subsequent proceedings, and that this action may proceed against them under their true names.

## IV.   INTRODUCTION

13.     The crux of Plaintiff's case is that, after the original lender (PCM Financial Services) sold Plaintiff's mortgage Note and Deed of Trust to Lehman Brothers Bank, FSB ("LEHMAN") on or before August 22, 2003 (the ADOT1 does not have an execution date stated), a series of subsequent void and invalid documents were executed and recorded at the Santa Cruz County Recorder's Office, including but not limited to, a void and invalid second Assignment of Deed of Trust ("ADOT2"), a third Assignment of Deed of Trust ("ADOT3"), and a fourth Assignment of Deed of Trust ("ADOT4"), which falsely purports to assign Plaintiff's Deed of Trust (together with the Note) into a Securitization Trust. Said Securitization Trust ("MBS Trust") ceased to allow any transfers into or out of the MBS Trust in 2003, the year prior to the actual execution of the ADOT4. Said Closing Date of the MBS Trust was on or around July 30, 2003.which required all transfers into the MBS Trust to be made no later than July 30, 2003.

14.     After the aforementioned void and invalid documents were executed and recorded by Defendants at the Santa Cruz County Recorder's Office, Defendants have initiated a wrongful and illegal foreclosure by executing and recording a second Notice of Default ("NOD2"), after executing, recording and rescinding an initial Notice of Default ("NOD1").

## V. STATEMENT OF MATERIAL ACTS

15.     On or about May 20, 2003, Plaintiff entered into a residential mortgage loan transaction (the "Original Loan Transaction") with PCM Financial Services ("PCM").  Plaintiff's mortgage loan consisted of a Promissory Note ("Note") and a Deed of Trust ("DOT") securing the property. The DOT was recorded as Instrument No. 2003-0054653 on June 6, 2003 in the official records of the Santa Cruz County Recorder. True and correct copies of the Note and  DOT are attached hereto as

**Exhibit "1"and Exhibit "2"**, respectively, and incorporated herein by reference as though fully set forth.

16.   On or before July 29, 2003, Bill Johnson, in the capacity as Chief Financial Officer for Kay-Co Investments, Inc. DBA PCM Financial Services, A California Corporation, executed a Corporation Assignment of Deed of Trust ("ADOT1"), which was subsequently recorded at the Santa Cruz County Recorder's Office as Instrument #2003-0084482. A true and correct copy of this ADOT1 is attached hereto as **Exhibit "3"** and incorporated by reference as though fully set forth herein. Said ADOT1 transferred all beneficial title of Plaintiff's note and Deed of Trust to LEHMAN, effectively making **LEHMAN the owner of Plaintiff's note**.

## WILL THE "REAL" BENEFICIARY/OWNER PLEASE STAND UP?

17.   After what appears to be a legitimate initial transfer of beneficial interest in Plaintiff's Deed of Trust and note from PCM to LEHMAN, all subsequent recorded documents, along with assertions made both orally and in writing from Defendant CITI to Plaintiff, appear to be riddled with known falsities and inconsistencies, while Defendants initiated and continue to move forward with an unlawful and wrongful foreclosure process. As shown below, parties executing various recorded documents allege known false assertions that they are officers of companies for which they are not employed, assert factual statements, known to be false, relating to who is the actual noteholder/beneficiary, assert knowingly false assertions that MERS purchases and sells beneficial interest in mortgage notes and Deeds of Trusts and physically transfers said notes and Deeds of Trust to other parties, that somehow Defendant CITI became the "Lender" who entered into a loan with Plaintiff on May 20, 2013 (when the original Deed of Trust and Note clearly distinguish PCM as the Lender who entered into a loan with Plaintiff, and that, as will be discussed later in this Verified Complaint, that all rights, title and beneficial interest in Plaintiff's Note and Deed of Trust was somehow, in violation of the terms included in the very Pooling and Servicing Agreement which created the Securitization Trust, transferred into the MBS Trust 11 years after the Closing Date of said MBS Trust expired, making it a contractual impossibility that the interest in Plaintiff's note and Deed of Trust was transferred into said MBS Trust in 2014!

7

18.  To summarize, from the ADOT2 to the current Notice of Default ("NOD2"), each and every document recorded with the Santa Cruz County Recorder's Office have been executed and recorded by Defendants, knowing that said documents were fraudulent, void and invalid, and these documents are being used by Defendants to initiate and carry out a wrongful and illegal foreclosure of Plaintiff's home.

19.  **On January 19, 2006**, Krista Gingrich, in the capacity as Assistant Vice-President for LEHMAN, executed a Corporate Assignment of Deed of Trust ("ADOT2"), purportedly granting, assigning and transferring to **Mortgage Electronic Registration Systems, Inc. all beneficial interest** in Plaintiff's Deed of Trust, **together with the note** described, or referred to, in Plaintiff's Deed of Trust. Said ADOT2 was subsequently recorded on January 24, 2006 at the Santa Cruz County Recorder's Office as Instrument #2006-0004439A true and correct copy of the ADOT2 is attached hereto as **Exhibit "4"** and incorporated by reference as though fully set forth herein.

20.  However, there are, at the very least, two problems with the validity of said ADOT2: (1) said ADOT2 was executed by an *actual* Aurora Loan Services Inc. ("AURORA") employee (Krista Gingrich), and *NOT* executed by a LEHMAN employee; and (2) Said ADOT2 asserts that LEHMAN;

> "grants, assigns and transfers to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC A DELAWARE CORPORATION at 1595 SPRING HILL ROAD, SUITE 310, VIENNA, VA 22182 all beneficial interest under that certain Deed of Trust dated 5/20/2003, in the amount of $1,102,000.000, executed by PENNY SLINGER HILLS…"

21.  However, said ADOT2, which asserts that **MERS became the beneficiary/owner of Plaintiff's note**, is fraudulent, void and invalid, as MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") does not purchase nor sell Notes and Deeds of Trusts/Mortgages, does not actually hold in its physical custody any Notes and Deeds of Trust/Mortgages, does not own any actual beneficiary interest in any Notes and Deeds of Trust. Said facts are supported by MERS' own assertions under oath in a somewhat recent Nebraska Supreme Court Case. *Mortgage Elec. Registration Sys., Inc. v. Neb. Dep't of Banking and Fin.*, 704 N.W.2d 784, 785 (Neb. 2005).

22.  The Nebraska Supreme Court, in its decision, stated;

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.     Verified Complaint

"MERS argues that **it does not acquire mortgage loans** and is therefore not a mortgage banker under § 45-702(6) because it **only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members.**     Further, MERS argues that **it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes.**     MERS explains that it merely "immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur."     Brief for appellant at 12." [**Bold** Emphasis Added]

23. Unlike practically each and every other case that has been filed against MERS, in state and federal courts nationwide, in the capacity "as Nominee Beneficiary for Lender and its successors and/or assigns", Plaintiff's case does *not* include this language in her original Deed of Trust. In Plaintiff's case, MERS is neither mentioned in her original Note, nor in her original Deed of Trust, which was signed by Plaintiff at the time of execution. Note that, as evident in both the ADOT2 and ADOT3, respectively, MERS is not alleging that it is acting in the capacity as nominee beneficiary for the original Lender and/or its successors and assigns. Instead, the ADOT2 asserts that all *beneficial* rights, title and interest was transferred to MERS. Also, in said ADOT3, MERS asserts that it is transferring its ownership/beneficial interest and physical custody of Plaintiff's note and Deed of Trust to Defendant CITI. As aforementioned in the above Nebraska Supreme Court case decision, as well as the Appellate Brief submitted by MERS themselves, MERS only acquires *legal* title to Mortgages/Deeds of Trust and acquires them *only in a nominee capacity*. Also as aforementioned in the above Nebraska Supreme Court Case decision and Appellate Brief submitted by MERS, **MERS does not own the promissory notes secured by mortgages or deeds of trust.**

24. Thus, MERS' own admissions, asserted under oath to the Supreme Court of Nebraska, as well as through their own Appellate Brief filed to the Appellate Court of Nebraska, support Plaintiff's allegations that the truth of the matters asserted therein both documents (i.e., the contents of said documents which states that MERS purchased or otherwise had transferred all beneficial interest in Plaintiff's Deed of Trust, together with the Note, and that MERS had physical custody of said Deed of Trust and note and actually sold/transferred all beneficial interest/ownership of Plaintiff's Deed of Trust and note to CITI) are in reasonable dispute and false, at the very least.

9

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.     Verified Complaint

25.  On November 12, 2009, Plaintiff executed and mailed to Defendant CITI a Qualified Written Request ("QWR1"), in which she requested Defendant CITI to notify her in writing as to who was the noteholder of her loan. Plaintiff requested Defendant CITI to respond back to her within 14 days. A true and correct copy of the QWR1 is attached hereto as **Exhibit "5"** and incorporated by reference as though fully set forth herein.

26.  **On December 9, 2009**, Plaintiff contacted CITI by telephone and spoke with a CITI representative named Andrea. Plaintiff explained to Andrea that Plaintiff sent to CITI a QWR ("QWR1") on November 12, 2009 but still had not heard back from CITI Plaintiff asked Andrea for the name of the investor who owned Plaintiff's note. Andrea replied to Plaintiff that **Aurora Loan Services is the actual investor who owns Plaintiff's note**.

27.  On December 21, 2009, Plaintiff contacted CITI by telephone and spoke with a CITI representative named Arjuna. Plaintiff explained to Arjuna that Plaintiff sent to CITI a QWR ("QWR1") on November 12, 2009 but still had not heard back from CITI Plaintiff asked Arjuna for the name of the investor who owned Plaintiff's note. Arjuna replied to Plaintiff that Plaintiff would receive from Defendant CITI a written response to Plaintiff's QWR on December 28, 2009. Plaintiff did not receive any written correspondence from Defendant CITI on or before December 28, 2009.

28.  On December 29, 2009, Plaintiff again contacted CITI by telephone and spoke with a CITI representative named Dolores. Plaintiff explained to Dolores that Plaintiff sent to CITI a QWR ("QWR1") on November 12, 2009 but still had not heard back from CITI and that, on December 21, 2009, Arjuna stated to her that Plaintiff would receive a written reply from Defendant CITI by December 28, 2009 but that she still has not received any written reply to her QWR. Dolores replied to Plaintiff that the written QWR reply had been sent to her.

29.  On December 30, 2009, Plaintiff executed and mailed to Defendant CITI a *second* Qualified Written Request ("QWR2"), in which again she requested Defendant CITI to notify her in writing as to who was the noteholder of her loan. Plaintiff requested Defendant CITI to respond back to her. A true and correct copy of the QWR2 is attached hereto as **Exhibit "6"** and incorporated by reference as though fully set forth herein.

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.      Verified Complaint

30.  During this time period, Plaintiff was in discussions with Defendant CITI regarding the process of applying for a Loan Modification.

31.  On January 8, 2010, Plaintiff faxed over to Defendant CITI's Mortgage Investor Services Department yet *another* letter ("QWR3") requesting who was the current investor who allegedly held her note. Plaintiff states that she had since received two sets of documents from Defendant CITI, neither of which stated who was the current investor at the time. A true and correct copy of the QWR3 is attached hereto as **Exhibit "7"** and incorporated by reference as though fully set forth herein.

32.  After receiving no response from Defendant identifying who was the investor and noteholder of my note, on February 16, 2010, Plaintiff *again* called CITI to find out why Defendant CITI has not provided the name of the purported investor of her note. Defendant CITI's representative in the Customer Service Department advised Plaintiff to fax over her January 8, 2010 QWR again (QWR3), in which Plaintiff again faxed over said QWR3 to Defendant CITI Plaintiff kept a record of said second fax to Defendant CITI ("Transmission Verification Report"). A true and correct copy of the Transmission Verification Report, along with the QWR3) is attached hereto as **Exhibit "8"** and incorporated by reference as though fully set forth herein.

33.  On or around the first week of **April, 2010**, Plaintiff received from Defendant CITI a written reply ("QWR Reply"), dated March 30, 2010, to her multiple QWRs. In said QWR Reply, Defendant CITI stated;
> "**The Owner of your mortgage is:**
> **The Bank of New York Mellon**
>
> **Global Corporate Trust-Structured Finance Services**
> 101 Barclay Street, 4W, New York, NY 10286
>
> CITI is the Servicer of your mortgage. As Servicer, **we have the authority to act on the Owner's behalf** regarding the administration of your loan." [**Bold** Emphasis Added]

34.  A true and correct copy of the QWR Reply is attached hereto as **Exhibit "9"** and incorporated by reference as though fully set forth herein.

35.  **On May 24, 2010**, Plaintiff entered into a loan Modification Agreement ("Loan Mod") with CITI as "Lender" (though on no prior documents was CITI ever listed as Lender, or listed as successor beneficiary) and Mortgage Electronic Registration Systems, Inc. **("MERS")** as "Mortgagee" (i.e., **the owner of Plaintiff's note**, though, no documents ever listed MERS as mortgagee until the ADOT2 and ADOT3, which have already been alleged to be void and invalid.). A true and correct copy of the Loan Mod is attached hereto as **Exhibit "10"** and incorporated by reference as though fully set forth herein.

36.  Secondly, on the most recent communication from CITI only *one month prior* (**April, 2010, Exhibit 9**) to the execution of said Loan Mod, CITI stated in its written reply to Plaintiff's multiple QWR requests that **The Bank of New York Mellon Global Corporate Trust-Structured Finance Services was the owner of Plaintiff's note.** Thirdly, **on December 9, 2009**, less than 5 months before the execution of said Loan Mod, a HUD-Certified CITI representative named Andrea stated to Plaintiff that **Aurora Loan Services was the owner of Plaintiff's note**.

37.  On August 30, 2012, Sandra A. West, acting in the capacity as Assistant Secretary for MERS, executed an Assignment of Deed of Trust ("ADOT3"), purportedly granting, bargaining, selling, transferring and setting over from Mortgage Electronic Registration Systems, Inc. its successors and assigns to Defendant CITI **"that certain Deed of Trust recorded in the Official Records of Santa Cruz County, California and executed by Penny Slinger Hills dated 05/20/2003…"** (note, that *nowhere* on said ADOT3 does it state that Defendant MERS is transferring all *beneficial interest* in Plaintiff's Deed of Trust*, together with the note,* in Plaintiff's Deed of Trust. So, not only does MERS not purchase or sell Deeds of Trusts and notes, in this ADOT3, MERS does not even assert such a falsity, other than the falsity that they own the note and Deed of Trust to begin with. Moreover, Sandra A. West is not an Officer nor employee of MERS, but is instead an employee of CITI at the time said document was executed. In fact, said ADOT3 was both executed and notarized in the State of Missouri, though MERS has no business offices located in the State of Missouri. Said ADOT3 was recorded at the Santa Cruz Recorder's Office as Instrument number 2012-0042827 on September 6, 2012. Said ADOT3 was purportedly executed at

1000 Technology Drive, O'Fallon, MO 63368. A true and correct copy of the ADOT3 is attached hereto as **Exhibit "11"** and incorporated by reference as though fully set forth herein.

38.  **On March 4, 2014**, Charlie Thomas, acting in the capacity as Document Control Officer for Defendant CITI, executed an Assignment of Deed of Trust ("ADOT4"), purportedly granting, bargaining, selling, assigning, transferring and setting over to **BANK OF NEW YORK AS TRUSTEE FOR THE STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-24A ("MBS Trust")** (whose mailing address is 1000 Technology Drive, O'Fallon, MO 63368) "**that certain Deed of Trust** recorded in the Official Records of Santa Cruz County, California and executed by Penny Slinger Hills dated 05/20/2003…" [**Bold** Emphasis Added]

39.  Note, again as with the ADOT3, that this ADOT4 also does not state *anything* about transferring all *rights, title and beneficial interest* of Plaintiff's Deed of Trust, together with the note, to the MBS Trust. A true and correct copy of said ADOT4 is attached hereto as **Exhibit "12"** and incorporated by reference as though fully set forth herein.

40.  Moreover, Plaintiff has researched said MBS Trust on the Securities and Exchange government Website, and has discovered that said MBS Trust's Closing Date expired at 10:00 am, New York time, on or about July 30, 2003. Plaintiff printed said information from the SEC website. A true and correct copy of said SEC printout is attached hereto as **Exhibit "13"** and incorporated by reference as though fully set forth herein.

41.  A Closing Date in a Pooling and Servicing Agreement, which is an agreement which creates an MBS Trust, requires that all mortgage loans must be physically transferred and assigned into the Securitization Trust by no later than the Closing Date. The required intervening assignment of the Plaintiff's Deed of Trust ("DOT") and endorsement of the Promissory Note ("Note") pursuant to the governing securitization agreement, never occurred on or before the MBS Trust's "Closing Date" on or about July 30, 2003. The aforementioned MBS Trust, in order to retain an election and continuing qualification as real estate mortgage conduits (REMICs) pursuant to the Internal Revenue Service Tax Code of 1986 (the "Tax Code"), must ensure that such assignment of the Deed of Trust and

transferring of the mortgage note be transferred by the Closing Date. Otherwise, said MBS Trust loses its REMIC status and cause an immense tax consequence to the MBS Trust.

42.  Thus, in order to protect its REMIC, tax-friendly status, pursuant to the express terms of the MBS Trust and Pooling and Servicing Agreement which created the MBS Trust, the only way assigned all beneficial interest of Plaintiff's note and Deed of Trust to said MBS Trust by on or around July 30, 2003.

43.  As Defendants have asserted in the various aforementioned recorded documents of apparent legal significance that multiple assignments of all rights, title and beneficial interest in Plaintiff's Deed of Trust, together with the physical transferring of her note, have been transferred to multiple parties/defendants; none of which identified the MBS Trust as transferee/assignee until 11 years after the Closing Date of the said MBS Trust expired.

44.  Furthermore, in addition to various Assignments of her Deed of Trust (ADOT2 and ADOT3) which assert various transfers (LEHMAN to MERS & MERS to Citimortgage, Inc), Plaintiff was told in various telephone calls, as well as through written correspondence and other recorded documents, beginning on December 9, 2009 through June 26, 2014, that the investor/owner of her note and Deed of Trust was Aurora Loan Services (December 9, 2009 on telephone call with Andrea), then The Bank of New York Mellon Global Corporate Trust-Structured Finance Services (March 3, 2010 in QWR Reply Letter) , then MERS (May 12, 2010 in Loan Mod), then SASCO Nationstar (on June 26, 2014 telephone call), then Bank of New York as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-24A (September 17, 2014 stated on Substitution of Trustee Document ("SOT1") recorded on October 1, 2014 as Instrument number 2014-0032984 at the Santa Cruz County Recorder's Office). A true and correct copy of said SOT1 is attached hereto as **Exhibit "14"** and incorporated by reference as though fully set forth herein.

45.  **On June 19, 2015**, Christina Chiodini, acting in the capacity as Authorized Representative for Defendant CITI as attorney-in-fact, executed a second Substitution of Trustee document ("SOT2"), purportedly substituting **National Default Servicing Corporation ("NDSC")** as duly

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.     Verified Complaint

appointed Trustee for "**The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York as Successor-in-Interest to JPMorgan Chase Bank, N.A. as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-24A by and through its attorney-in-fact Citimortgage, Inc.**" [**Bold** Emphasis Added]

46.   On June 24, 2015, said SOT2 was recorded at the Santa Cruz County Recorder's Office as Instrument number 2015-0025278. A true and correct copy of said SOT2 is attached hereto as **Exhibit "15"** and incorporated by reference as though fully set forth herein.

47.   **On July 6, 2015**, a Wendy Van Laven, in the capacity as Director of Operations for NDSC, executed a second Notice of Default ("NOD2"), as the first NOD was subsequently rescinded. Said NOD2 alleged that NDSC was acting on behalf of the Beneficiary but **did not state who the actual current Beneficiary was**. Said Document was recorded at the Santa Cruz County Recorder's Office as Instrument number 2015-0027398 on July 7, 2015. A true and correct copy of said NOD2 is attached hereto as **Exhibit "16"** and incorporated by reference.

48.   Note, again as with the ADOT3, that this ADOT4 also does not state *anything* about transferring all *rights, title and beneficial interest* of Plaintiff's Deed of Trust, together with the note, to the MBS Trust.

49.   On October 12, 2015, Plaintiff learned that she could identify who was the Servicer and Investor/Beneficiary of any MERS-related loan going onto the MERS Servicer-ID Website. Plaintiff searched on the aforementioned website on October 12, 2015 in an attempt to identify who her actual Beneficiary/Investor was for her Note and Deed of Trust. However, said Servicer-ID Website merely directed her to contact the Servicer to find out who her Beneficiary/Investor was. This put Plaintiff back to square one in terms of still not knowing clearly who the Beneficiary/Investor of her Note and Deed of Trust was. Plaintiff printed out a copy of said information from the MERS Servicer-ID Website. A true and correct copy of said MERS Servicer-ID Website Printout is attached hereto as **Exhibit "17"** and incorporated by reference.

50.   To summarize this confusing trail of "Will the Real Investor/Beneficiary Please Stand Up?", Plaintiff has created a Table of Confusion and Falsity below:

15

| Date | Document | New Alleged Investor/Beneficiary |
|---|---|---|
| May 20, 2003 *Note, Closing Date of MBS Trust is on or around July 30, 2003 | Original Deed of Trust | PCM Financial Services |
| Before recording date of August 22, 2003-no execution date listed and notary date is illegible | ADOT1 | LEHMAN |
| January 19, 2006 | ADOT2 | MERS |
| December 9, 2009 | Telephone call to Citimortgage, Inc HUD-Certified representative (Andrea) | Aurora Loan Services |
| March 3, 2010 | QWR Reply Letter | The Bank of New York Mellon Global Corporate Trust-Structured Finance Services |
| May 12, 2010 | Loan Mod | MERS |
| August 30, 2012 | ADOT3 | CITI |
| March 4, 2014 | ADOT4 | Bank of New York As Trustee For The Structured Asset Securities Corporation |

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.     Verified Complaint

| | | Mortgage Pass-Through Certificates, Series 2003-24A |
|---|---|---|
| June 26, 2014 | Telephone call to CITI representative | SASCO Nationstar |
| September 17, 2014 | 1st Substitution of Trustee ("SOT1") | Bank of New York As Trustee For The Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-24A |
| June 19, 2015 | 2nd Substitution of Trustee document ("SOT2") | The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York as Successor-In-Trust to JPMorgan Chase Bank, N.A. as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series2003-24A, by and through its attorney-in-fact CITI |
| July 6, 2015 | 2nd Notice of Default ("NOD2") | (Implied) CITI C/O National Default Servicing Corporation, an Arizona |

| | | Corporation (current Beneficiary is not expressly stated). National Default Servicing Corporation is expressly stated as either the original Trustee, , the duly appointed substituted Trustee or acting as Agent for the Trustee or Beneficiary |
|---|---|---|
| October 12, 2015 | MERS Servicer ID website printout | Printout does not state who is the current Investor. Instead, is states the following: "Investor: For Investor name please contact the Servicer." |

51. Pursuant to *Covenant No. 24* of the Deed of Trust, only the lender (in this case the "undocumented" and "unknown" successor beneficiary and note holder and/or its duly authorized agent) has the power and authority to appoint a successor Trustee under the DOT. Specifically, *Covenant No. 24* in the DOT states:

> "**Substitute Trustee**. *Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder <u>by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located</u>. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor Trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution."* [Underline added]

18

52.  Therefore, such Substitutions of Trustee documents ("SOT1" and "SOT2", respectively,  are without legal effect and force; it are not just voidable, but entirely void.

53.  Though Plaintiff contested the allegation that she was required to pay to the Pite Duncan LLP, Atny Trust Account at Bank of America an arrearage in the amount of $217,622.88, Plaintiff acted in good faith and "cured" her contested alleged loan default on December 29, 2014 by making a wire transfer payment in the amount of $217,622.88, using a Funds Transfer Request Authorization form ("FTRA Form"). A true and correct copy of said FTRA Form is attached hereto as Exhibit "14" and incorporated by reference as though fully set forth herein.

54. As of December 29, 2014, according to the prior SOT1, the purported beneficiary of Plaintiff's Note and DOT was Bank of New York As Trustee For The Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-24A, However, less than three months prior (June 26, 2014), Plaintiff was told by a CITI representative on the telephone that the beneficiary was SASCO Nationstar. As Plaintiff discovered that the MBS Trust's Closing Date, for which Bank of New York was serving as Trustee, occurred back in 2003, Plaintiff still disputed a material fact as to who was the actual beneficiary of her Note and DOT at the time. The chronology did not add up as to who held beneficial rights, title and interest of her Note and DOT.

55.  As Plaintiff continued to request a clear written answer to her inquiry into who was the actual entity that held beneficial rights, title and interest in her Note and DOT, her inquiry remained unanswered.

56.  As detailed in the chart above, even after Plaintiff made a good faith payment in the amount of $217,622.88, CITI representative would still not provide a clear answer as to who was the current beneficiary of Plaintiff's Note and DOT, and how the MBS Trust could have her interest in her DOT and Note, particularly when the executed and recorded documents filed with the Santa Cruz County Recorder's Office expressly contradict the provisions, terms and requirements (including the Closing Date deadline to put any notes into the MBS Trust) of the Trust Agreement and Pooling and Service Agreement themselves.

57. As aforementioned in the above chart, less than six months after making the good faith payment to Bank of America in the amount of $217,622.88, the SOT2 was executed and recorded at the Santa Cruz County Recorder's Office, which shows a substitution of trustee made by a beneficiary that is similar but *not the same* as the prior alleged beneficiary; The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York as Successor-In-Trust to JPMorgan Chase Bank, N.A. as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series2003-24A, by and through its attorney-in-fact CITI. So, though it shows that the Bank of New York Mellon was formerly the Bank of New York, no such language mentioning that the "Bank of New York as Successor-In-Trust to JPMorgan Chase Bank, N.A. as Trustee for…" the MBS Trust was ever stated in any executed and recorded documents prior to the execution of said SOT2.

58. On July 6, 2015, Plaintiff received in the mail the NOD2, which did not express in said document who the actual beneficiary was for which the NOD2 was being executed and recorded.

59. On October 12, 2015, Plaintiff learned that any loan alleged to have involved Defendant MERS may be looked up online at www.mers-servicerid.com to find out who is the borrower's servicer and investor/beneficiary. Yet, when plaintiff went to said website and entered every required information to determine who, according to MERS, was her current servicer and investor, the website also could not provide Plaintiff with the name of the alleged investor/beneficiary. Instead, the website directed Plaintiff to contact her servicer for such information as to who is her current investor/beneficiary.

60. Plaintiff has filed this Verified Complaint against said Defendants for the aforementioned Causes of Action and for this honorable court to execute a Declaration that none of the Defendants are entities that hold beneficial rights, title and interest in Plaintiff's Note and DOT, that said aforementioned recorded documents, with the exception of the DOT and ADOT1, are false, fraudulent invalid and void, and that any documents predicated on said documents are also void and of no legal effect.

61. Plaintiff stands willing and able to pay any alleged arrearages to the *actual* Real Party In

20

Interest, should they come forward and substantiate their claim with proof that they are the Real Party In Interest of Plaintiff's Note and DOT. After making a good faith payment in the amount of $217,622.88 in order to be communicated back to in good faith and clear plausible responses, Plaintiff has ceased paying any of the named Defendants any more payments as Plaintiff alleges and believes in good faith that none of the named Defendants have authority to foreclose on Plaintiff's home, nor collect payments, as they are not agents of the actual beneficiary, nor hold rights of an agent of the true beneficiary.

62.  Plaintiff has filed this Verified Complaint in good faith, has access to funds to pay whatever arrearages are allegedly owed to the actual Real Party In interest and is willing to put said funds into a Trust Account of this Court's choosing, or supply a bond, as a result of the impending filing of Plaintiff's Application for TRO and Injunction, and upon having this court grant Plaintiff's soon to be filed Application for TRO and Injunction, should Defendant move forward with the foreclosure process by executing and recording a Notice of Trustee's Sale.

## COUNT 1: WRONGFUL FORECLOSURE
### (Against All Defendants)

63.  Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

64.  Defendants have initiated the foreclosure process on Plaintiff's subject property wrongfully, through the use of both invalid and fraudulent documents, which effectively void the NOD2, SOT1 and SOT2, and hold ineffective any other subsequent documents predicated on said void documents. These invalid and fraudulent documents prejudicially harmed Plaintiff, as Defendants were neither the true beneficiary, nor agents of the true beneficiary, rendering the foreclosure process illegal, fraudulent and oppressive on Plaintiff, and has caused a cloud on Plaintiff's title.

65. Defendants' acts are also in violation of California's non-judicial foreclosure scheme as codified under §2924 et seq. Specifically:

a.  The SOT1 and SOT2 issued by defendant CITI are invalid and void for the reasons specified herein.

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.      Verified Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

b.  The NOD2, initiating the foreclosure, was recorded in the name of an unknown party or not the true "beneficiary" in the mortgage loan.

c.  Under California law, the NOD which initiated the foreclosure on behalf of a party who is not a *true beneficiary at the time of filing the NOD* is void *ab initio*, rendering any subsequent foreclosure based on that NOD void as well. That is exactly the case here.

d.  As a separate ground for invalidation of the foreclosure - the entire chain of recorded documents is predicated on the basis that all previous alleged assignors and alleged beneficiaries had recognizable legal and beneficial interests in Plaintiff's DOT, which was not the case here. As detailed hereinbefore, Plaintiff believes and alleges that Bank of New York as Trustee For the Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-24A ("BNY as Trustee for the MBS Trust") illegally and wrongfully substituted CLEAR RECON CORP ("CRC") as trustee under Plaintiff's DOT, without any standing and authority from the "unknown" and "undocumented" true beneficiary and real party in interest in Plaintiff's mortgage loan.

66. Furthermore, Plaintiff believes and alleges that Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York as Successor-In-Interest to JPMorgan Chase Bank, N.A. as Trustee For Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-24A ("BNY as Trustee for the MBS Trust"), by and through its attorney-in-fact CITI illegally and wrongfully substituted defendant NATIONAL DEFAULT SERVICING CORP ("NDSC") as Trustee under Plaintiff's DOT, without any standing and authority from the "unknown" and "undocumented" true beneficiary and real party in interest in Plaintiff's mortgage loan. Following the broken chain through to conclusion, this means the SOT1, SOT2, as well as the NOD2 that was issued by NDSC, who is not a valid trustee, mortgagee, beneficiary or authorized agent of the unknown and undocumented true beneficiary, are each VOID. It is well established that where a purported Trustee without authority conducts a Trustee's Sale, that sale is *void* as a matter of law and must be rescinded. Thus, in this case, any and all documents that involve the initiation of the foreclosure process must also be void and must be rescinded.

67. Thus far, Defendants, collectively, have refused to stop the foreclosure process despite the

challenge and requests from Plaintiff, have not rescinded the most recent Notice of Default (NOD2) and subsequently continuing the wrongful, illegal and oppressive foreclosure process relating to Plaintiff's home without the legal authority to do so.

68. Defendant NDSC, not the trustee or authorized agent of the unknown and undocumented true beneficiary in the DOT, has initiated foreclosure proceedings on Plaintiff's property based on illegal and fraudulent executed and recorded documents (ADOT2, ADOT3, ADOT4, NOD2, SOT1 and SOT2) by Defendants. Defendant knowingly recorded invalid and fraudulent foreclosure documents at the behest of multiple named Defendants, and thereby willfully violated the requirements of California's non-judicial foreclosure statutes.

69. In initiating the aforementioned illegal foreclosure proceedings, all and each of the Defendants stated herein acted with willful oppressiveness and malice toward Plaintiff.

## TENDER RULE NOT APPLICABLE HERE

70. Where a trustee's sale can be shown as unlawfully conducted and therefore void, a showing of tender of amount due is rendered unnecessary. (*Bank of America v. La Jolla Group II*, (2005) 129 Cal.App.4th 706, 712, 28 Cal.Rptr.3d 825).

71. Here, as set forth above, Plaintiff alleges that the aforementioned recorded documents that are being used in the foreclosure process are VOID, not just voidable, and that it would be inequitable to require tender.

72. Even assuming arguendo that Defendants could muster the sentiment of this Court to side with their contentious ideology, allowing the foreclosure process in this case would nonetheless be highly inequitable and injurious beyond repair.

73. The tender requirement does not apply to this case because Plaintiff challenges the beneficial interest claimed by Defendants in the deed of trust, not just procedural sufficiency of the foreclosure itself.

74. Denying the Defendants' ability to enforce the clouded title and invalid mortgage and foreclosure instruments would also find support in deferring to public policy considerations of fairness and in the interests of justice.

75. Plaintiff has suffered, and continue to suffer damages, proximately caused by NDSC's illegal and fraudulent foreclosure activities against Plaintiff, including but not limited to the loss of her real property, severe emotional distress, mortgage payments wrongfully paid to Defendants CITI through Pite Duncan LLP,its Legal Counsel, which had no the authority to collect such payments, increased costs and fees assessed against her associated with the wrongful foreclosure activities, legal fees to subsequently regain title of the property, and inter alia, damage to her credit.  Plaintiff has been prejudicially damaged by the actions of Defendants in an amount not presently ascertained and will be proven at trial. Plaintiff is also entitled and seeks punitive damages against the Defendants as a result of the illegal, fraudulent and willfully oppressive foreclosure activities against Plaintiff that Defendant NDSC has engaged in at the direction of Defendant Bank of New York as Trustee.

**COUNT 2: QUIET TITLE**
**(Against All Defendants)**

76. Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

77. Plaintiff is and at all times relevant hereto was the owner and/or entitled to exclusive possession of the real property located at 910 Harmon Gulch Road, Boulder Creek, California 95006 with A.P.N. 089-091-24 (the "Property.") and whose legal description is:

> PARCEL I:
> A portion of the land conveyed to Frank W. Roeckner et ux, by deed recorded February 6, 1946 in Volume 528, Page 418, Official Records of Santa Cruz County, and more particularly described as follows:
> Beginning at a 1-1/2 inch pipe at the intersection following a 20 foot road (known as Harmon Gulch Road) with the East-West ¼ section line running through Section 16, T. 9 S., R. 2 w., M.D.B. & M., as shown upon the Record of Survey Map filed for record February 19, 1965, in Map Book 43, Page 14, Santa Cruz County Records; thence from said point of beginning along the centerline of said road the following courses and distances: North 39º 41' 07" West 85.55 feet to a ¾ inch pipe; North 71º 03' 52" West 98.65 feet to a ¾ inch pipe; North 80º 04' 50" West 79.51 feet to a ¾ inch pipe; North 68º 20' 17" West 149.52 feet to a ¾ inch pipe; North 17º 52' 59" West 128.21 feet to a ¾ inch pipe; North 54º 16' 44" West 174.77 feet to a ¾ inch pipe; South 88º 32' 04" West 80.08 feet to a ¾ inch pipe; North 50º 27' 0" West 112.09 feet to a ¾ inch pipe and North 39º 33' 48" West 99.74 feet to a ¾ inch pipe; thence leaving said road North 39º 33' 48"  West 90.25 feet to a ¾ inch pipe at the

24

most Southerly corner of the lands conveyed to N.E. Hamilton, et ux, by deed recorded in Volume 1625, Page 412, Official Records of Santa Cruz County; thence along the Southeasterly line of said lands of Hamilton North 49º 22' 17" East 275.30 feet to a 3/4 inch pipe and North 20º 02' 17" East 825.80 feet to a ¾ inch pipe at the most Easterly corner thereof; thence leaving said last named lands along the Northeasterly line of said lands of Roeckner South 55º 17' 43" East 1435.60 feet to an axle at the Northeasterly corner thereof on the North-South ¼ Section line running through said Section 16; thence along said ¼ Section line South 1º 16' 50" East 708.40 feet to a 1-1/2 inch iron pipe at the center of said Section 16; thence along the East-West ¼ Section line running through said center South 89º 25' 03" West 854 feet to the point of beginning.

Parcel II:

A right of way, described as being "over said Harmon Gulch Road" and "the same right of way as set out in the deed to Minnie E. Peterson, recorded in Volume 407, Page 479, Official Records of Santa Cruz County."

Said right of way is the same as was first reserved to Frank W. Roeckner, et ux by Instrument recorded August 23, 1965, in Book 1713, Page 464, Official Records of Santa Cruz County, as appurtenant to the land described as Parcel I hereinabove, and other land.

Assessor's Parcel Number: 089-091-24

NOTE: Parcel II herein described is only being included so as to avoid the Company being the cause of excluding it from deeds or encumbrances, but NO INSURANCE is to be provided as to said parcel.

Anything to the contrary in the policy or endorsements thereto notwithstanding, said parcel is NOT INSURED even though it may be included as part of the description of the land described or referred to in the policy.

The Company requires that the insured(s) acknowledge in writing that they understand this.

Should a request, however, be made for insurance in this regard, it must be referred to the Title Department for an appropriate response.

78. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, claim an interest in the property adverse to Plaintiff's herein. However, the claim of said Defendants is without any right whatsoever, and not one of the Defendants has legal or equitable right, claim, or interest in the property. Plaintiff seeks to quiet title against the claims of Defendants and all persons claiming any legal or equitable right, title, estate, lien, or adverse interest in the Subject Property as of the date the Complaint was filed (October 26, 2015) (Cal. Code Civ. Proc. §760.020).

79. Plaintiff therefore seeks a declaration that the title to the subject property is vested in Plaintiff alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said Defendants, and each of them, be forever

enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein. Plaintiff seeks an order from this court instructing the clerk of the court to execute in recordable form a deed of reconveyance to Plaintiff's Property.

### COUNT 3: FRAUD BY DECEIT
### (Against Defendant CITI)

80. Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

81. California Civil Code §1572 provides that, "[A]ctual fraud consists of any of the following acts, committed by or with the connivance of a party to a contract with the intent to deceive another party to the contract, or to induce the other party to enter into the contract:  1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2) The positive assertion, in any manner not warranted by the information of the person making it, of that which is not true, though the person making the assertion believes it to be true; 3) The suppression of that which is true, by one having knowledge or belief of the fact; 4) A promise made without any intention of performing it; and 5) Any other act fitted to deceive."

82.  Plaintiff alleges intentional misrepresentation, fraud and deceit by Defendants with facts to prove the following: 1) Misrepresentation; 2) Scienter; 3) An intent to induce Plaintiff's reliance on the misrepresentation; 4) Causation; 5) Justifiable reliance on the misrepresentations by Plaintiffs; and 6) Damages.

83. On January 19, 2006, LEHMAN caused to be executed, and caused to be recorded on January 24, 2006, a fraudulent ADOT2 (Exhibit 4), which alleged to have granted, assigned and transferred to MERS all beneficial interest in Plaintiff's Deed of Trust, together with Plaintiff's Note. Said ADOT2 was allegedly executed at the Aurora Loan Services, Inc headquarters, located at 601 5th Avenue, Scottsbluff, NE 69361.

84.  As aforementioned in paragraphs 19-24 of this Verified Complaint, Defendant MERS does not purchase nor sell Notes and Deeds of Trusts/Mortgages, does not actually hold in its physical

custody any Notes and Deeds of Trust/Mortgages, does not own any actual beneficiary interest in any Notes and Deeds of Trust. Said facts are supported by MERS' own assertions under oath in a somewhat recent Nebraska Supreme Court Case. *Mortgage Elec. Registration Sys., Inc. v. Neb. Dep't of Banking and Fin.*, 704 N.W.2d 784, 785 (Neb. 2005).

85.  The Nebraska Supreme Court, in its decision, stated;

> "MERS argues that **it does not acquire mortgage loans** and is therefore not a mortgage banker under § 45-702(6) because it **only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members.**    Further, MERS argues that **it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes.**    MERS explains that it merely "immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur."    Brief for appellant at 12." [**Bold** Emphasis Added]

86. Thus, by the admissions, under oath to the Nebraska Supreme Court, the contents (i.e., the truth of the matter asserted) within the ADOT2 are a known falsity by MERS, as well as LEHMAN. Thus, both LEHMAN and Defendant MERS had knowledge of its falsity stated therein the ADOT2.

87. As aforementioned in paragraph 37 of this Verified Complaint, a Sandra A. West, purportedly acting in the capacity as Assistant Secretary of MERS, caused to be executed, and caused to be recorded on September 6, 2012, a fraudulent ADOT3 (Exhibit 11), which alleged that MERS granted, bargained, sold, assigned, transferred and set over onto Defendant CITI Plaintiff's Deed of Trust, with the intent on inducing Plaintiff into making mortgage payments to Defendant CITI, as both the loan Servicer AND beneficiary of Plaintiff's Deed of Trust.

88. Plaintiff reasonably relied on said false statements made in both the ADOT2 and ADOT3, respectively, by making monthly mortgage payments to Defendant MERS, through its purported Servicer Defendant CITI, and to Defendant CITI as both Beneficiary *and* Servicer for itself from February 1, 2006 through December 1, 2014.

89. Defendants MERS and CITI's conduct of falsely alleging to be the actual Beneficiary and loan Servicer for the actual Beneficiary was the proximate cause of Plaintiff's harm in paying out monthly mortgage payments to Defendants MERS and CITI from February 1, 2006 through

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.      Verified Complaint

December 1, 2014 because it is reasonably foreseeable that if Defendants MERS and CITI execute and record real property documents (ADOT2 and ADOT3) of apparent legal significance, that Plaintiff would end up making monthly mortgage payments to the party falsely claiming to have beneficial interest in her Note and Deed of Trust, or to falsely claim to be acting as the loan Servicer for the actual Beneficiary.

90. Defendants MERS and CITI are the actual cause of Plaintiff's harm because, but for Defendant MERS and CITI's false representations, Plaintiff would not have made nearly 15 years of monthly mortgage payments to a party who is neither the actual Beneficiary, nor holding rights of an actual Beneficiary of Plaintiff's Note and Deed of Trust, nor a legitimate loan Servicer for the actual Beneficiary of Plaintiff's Note and Deed of Trust. Note, that unlike the ADOT1 and ADOT2, respectively, the ADOT3 does not even claim to hold Plaintiff's Note, but rather only claims to hold the Deed of Trust.

91. Based on Defendant MERS and CITI's false assertions made to Plaintiff, Plaintiff has been harmed by making nearly 15 years of monthly mortgage payments, amounting to hundreds of thousands of dollars to a party that did not, nor does not, have the authority or right to collect monthly mortgage payments from Plaintiff. Furthermore, Plaintiff has been charged various late fees and penalties by Defendant CITI as a "Pretender Lender" and "Pretender Servicer", who had no rights to collect on Plaintiff's mortgage payments after January January19, 2006. Additionally, Plaintiff's credit rating has been damaged. As a result of the misconduct of Defendants MERS and CITI's illegal conduct of reporting derogatory credit history against Plaintiff when neither Defendant had any right or authority to file such derogatory credit information, Plaintiff has been harmed through the reporting of adverse derogatory credit information to the various credit bureaus, in the amount to be determined at trial.

92. Each and every document which is predicated on these fraudulent ADOTs (ADOT2 and ADOT3) is also void because the authority alleged to be exercised in said documents is based on fraudulent authority and is therefore void, not voidable (ADOT4, SOT1, SOT2, and NOD), and any

further document which may be executed hereafter that is predicated on said void ADOT and ADOT3 is void as well and is of no legal effect.

93. Unlike practically each and every other case that has been filed against MERS, in state and federal courts nationwide, in the capacity "as Nominee Beneficiary for Lender and its successors and/or assigns", Plaintiff's case does *not* include this language in her original Deed of Trust. In Plaintiff's case, MERS is neither mentioned in her original Note, nor in her original Deed of Trust, which was signed by Plaintiff at the time of execution. Note that, as evident in both the ADOT2 and ADOT3, respectively, MERS is not alleging that it is acting in the capacity as nominee beneficiary for the original Lender and/or its successors and assigns. Instead, the ADOT2 asserts that all *beneficial* rights, title and interest was transferred to MERS. Also, in said ADOT3, MERS asserts that it is transferring its ownership/beneficial interest and physical custody of Plaintiff's note and Deed of Trust to Defendant CITI. As aforementioned in the above Nebraska Supreme Court case decision, as well as the Appellate Brief submitted by MERS themselves, MERS only acquires *legal* title to Mortgages/Deeds of Trust and acquires them *only in a nominee capacity*. Also as aforementioned in the above Nebraska Supreme Court Case decision and Appellate Brief submitted by MERS, MERS does not own the promissory notes secured by mortgages or deeds of trust.

94. Thus, MERS' own admissions, asserted under oath to the Supreme Court of Nebraska, as well as through their own Appellate Brief filed to the Appellate Court of Nebraska, support Plaintiff's allegations that the truth of the matters asserted therein both documents (i.e., the contents of said documents which states that MERS purchased or otherwise had transferred all beneficial interest in Plaintiff's Deed of Trust, together with the Note, and that MERS had physical custody of said Deed of Trust and note and actually sold/transferred all beneficial interest/ownership of Plaintiff's Deed of Trust and note to CITI) are in reasonable dispute and false, at the very least.

95. Plaintiff is informed and believes and thereon alleges that the Defendants MERS and CITI, and each of them, in doing the things as hereinbefore alleged acted as to Plaintiff with malice and ill will, knowing that their actions would cause Plaintiff great trauma, financial and emotional suffering while subjecting Plaintiff fraudulently to the impending loss of her home. The conduct of the

Defendants was done knowingly without legal justification. Plaintiff is further informed and believes and thereon alleges that unless the callous, intentional and unlawful conduct of the Defendants, and each of them is not punished severely with an appropriate award of exemplary and punitive damages, Defendants and each of them will continue to plague the citizens of this country with their illegal actions.

96. Defendants knowingly caused to be filed the fraudulent ADOTs, NODs, SOTs against Plaintiff as none of the Defendants had a valid beneficial interest in Plaintiff's loan at the time the second-fourth ADOTs, NODs, SOTs were issued and therefore, Defendants are in violation of the California non-judicial foreclosure statutes, were without power to initiate foreclosure proceedings on Plaintiff's subject property.

97. Defendants had knowledge of the falsity of the aforementioned recorded documents and intended to defraud Plaintiff. Likewise, Defendant CITI knew that it had no authority to collect mortgage payments from Plaintiff because CITI  does not have any beneficial interest in the mortgage loan but nevertheless demanded and took payment from Plaintiff with intent to defraud.

98. Plaintiff justifiably relied on Defendants' false representations and suffered harm as a direct and proximate result of these deliberately false representations.  Specifically, the issuance of the fraudulent aforementioned recorded documents were necessary to cover up their illegal and wrongful conduct. The recorded NODs have negatively impaired Plaintiff's creditworthiness and leading to the impending loss of her property title. In addition, Plaintiff has suffered, and continues to suffer, severe emotional distress as a result of the fraud perpetrated upon her by the Defendants.

99. Defendants, and each of them, have acted intentionally and with malice and oppression against Plaintiff, proximately and actually causing Plaintiff harm. The aforementioned Defendants' conduct was egregious and encompassed a scheme and pattern of behavior, entitling Plaintiff to an award of exemplary and punitive damages.

**COUNT 4:**
**CANCELLATION OF WRITTEN INSTRUMENTS (NOTE & DOT, ADOT2, ADOT3,**
**ADOT4, NOD2, SOT1 AND SOT2)**
**(Against All Defendants)**

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.     Verified Complaint

100.    Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

101.    Cal. Civ. Code § 3412 provides in part: "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, on that person's application, be so adjudged and ordered to be delivered up or canceled." Plaintiff is informed and believes and thereon alleges that the written instruments affecting Plaintiff's real property have become a nullity and that if left outstanding they could cause injury to Plaintiff, or may be used vexatiously against her.  Plaintiff is further informed and believes that she is entitled to equitable relief from this court in the form of having the aforesaid written instruments delivered up and canceled when the evidence to impeach or invalidate the aforesaid written instruments is lost or may throw a cloud or suspicion over Plaintiff's title.

102.    Under Civ. Code § 3413, for a Deed of Trust to be subject to a cause of action for cancellation, the instrument must appear to be valid.  At the time Plaintiff executed the DOT and Note, said documents appeared to be valid as uniform instruments related to real property transactions.  Plaintiff herein seeks to cancel the DOT and Note, the ADOT2, ADOT3, ADOT4, NOD2, SOT1 and SOT2, resulting from the fraudulent activity of Defendants herein, activity that has caused an irreparable cloud on the title to Plaintiff's real property.  Plaintiff alleges that Defendants are unable to show clean, properly recorded and uninterrupted transfers and assignments of the Note and DOT to them, entitling Defendants to make any claim against Plaintiff's real property.

**COUNT 5: QUASI-CONTRACT FOR RESTITUTION BASED ON UNJUST ENRICHMENT**
**(Against All Defendant CITI & MERS)**

103.    Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

104.    Defendants have claimed rights to Plaintiff's Note.  Plaintiff has in fact made payments to Defendants pursuant to and in reliance upon Defendants' claims to rights to such payments.  As alleged hereinabove, Defendants here do not have rights to such payments.  Defendants had

knowledge of such circumstances giving rise to unjust enrichment at the time of claiming rights to payment from Plaintiff on the Note. Defendants knowingly acquired a benefit at the expense of Plaintiff without Plaintiff's knowledge.  Defendants, and each of them, received a benefit from Plaintiff of money had and received.  It is unjust for Defendants to retain the benefit at the expense of Plaintiff.  The true amount to the extent to which the Defendants, and each of them, have been unjustly enriched is unknown to Plaintiff at this time but the amount is believed to be within the jurisdictional limits of this court.  When the true amount is known, Plaintiff will either seek leave of court to amend this Verified Complaint, or present proof of same at the time of trial.

105.    Plaintiff is informed and believes and thereon alleges that the Defendants, and each of them, have no rights to the payments that Plaintiff made on the Note and that the same, with interest at the legal rate, should be refunded to Plaintiff.

**COUNT 6:**
**VIOLATION OF BUSINESS AND**
**PROFESSIONS CODE § 17200, *et seq*.**
**(Against All Defendants)**

106.    Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

107.    California Business & Professions Code § 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

108.    As more fully described above, Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice.  This conduct is ongoing and continues to this date.

109.     Specifically, Defendants engage in deceptive business practices with respect to mortgage loan servicing, transfer and assignment of notes and deeds of trust, foreclosure of residential properties and related matters by

(a)  Assessing improper or excessive late fees;

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.     Verified Complaint

(b)  Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees;

(c)  Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

(d)  Misapplying or failing to apply customer payments;

(e)  Failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;

(f)  Seeking to collect, and collecting, various improper fees, costs and charges, that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due;

(g)  Mishandling borrowers' mortgage payments and failing to timely or properly credit payments received, resulting in late charges, delinquencies or default;

(h)  Treating borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements or California law;

(i)  Failing to disclose the fees, costs and charges allowable under the mortgage contract;

(j)  Ignoring grace periods;

(k)  Executing and recording false and misleading documents; and

(l)  Acting as beneficiaries and trustees without the legal authority to do so.

110.    The Defendants fail to act in good faith as they claim fees for services but do not render same services competently and in compliance with applicable law.

111.    Moreover, the Defendants engage in a uniform pattern and practice of unfair and overly-aggressive servicing that result in the assessment of unwarranted and unfair fees against California consumers, and premature default often resulting in unfair and illegal foreclosure proceedings.  The scheme implemented by the Defendants is designed to defraud California consumers and enrich the Defendants.

112.    The foregoing acts and practices have caused substantial harm to California consumers. As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the Defendants, Plaintiff and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees and other improper fees and charges.

113.    By reason of the foregoing, the Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204.   Additionally, Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code § 17200 and related sections.

114.    Plaintiff alleges that Defendants' conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiff and requires this Court to weigh the utility of the Defendants' conduct against the gravity of the harm to Plaintiff.

115.    Plaintiff has suffered and is suffering, and will continue to suffer injury and financial ruin as a direct and proximate result of Defendants deceptive acts as alleged above.   Plaintiff is entitled under the Business and Professions Code § 17200 to equitable remedy of restitution (i.e. disgorgement) of all money, property and benefits wrongfully obtained by Defendants.

116.    The foregoing acts and omissions of Defendants affect trade and commerce as that term is defined under the Unfair Practices Act ("UPA").

117.    The UPA defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice and provides that a court may order injunctive relief and restitution to affected parties as a remedy for any violations of the UPA.

118.    Beginning on the dates indicated and at all times relevant herein, Defendants and/or the DOE Defendants have committed acts of unfair competition proscribed by the UPA including the acts and practices against Plaintiff alleged herein.

119.    Plaintiff continues to suffer manifest injustice in these matters.   Defendants continue in their acts in clear violation of both state and federal law.

**COUNT 7: DECLARATORY RELIEF**
**(Against All Defendants)**

120.     Plaintiff refers to and incorporates herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

121.     This is also an action for declaratory relief which is brought pursuant to C.C.P. §1060, which provides that any persons interested under a written instrument or a contract who desires a declaration of their rights or duties with respect to another or in respect to property may, in the case of an actual controversy relating to the legal rights and duties of the parties, bring an original action in the court for a declaration of their rights or duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract, with the declaration having the force and effect of a final judgment and which may be had before there has been any breach of the obligation in respect to which the declaration is sought.

122.     Plaintiff is a "person" within the meaning and intent of C.C.P. §1060.  There is an actual controversy, as Defendants commenced an illegal foreclosure process on Plaintiff's real property. Plaintiff has not been provided with any evidence that any of the Defendants has full and unencumbered legal title to both the Note and DOT and there is no evidence of any effective assignment of either the Note or the DOT by the original lender to any entity.

123.     C.C.P. §1062 provides that the remedies provided by the chapter are cumulative and shall not be construed as restricting any remedy, and further this chapter shall not preclude any party from obtaining additional relief based on the same facts.  C.C.P. §1062.3 provides that actions brought under this chapter shall be set for trial at the earliest possible date and shall take the precedence over all other cases except older matters of the same character and matters to which special precedence may be given by law.

124.     In that the Defendants have initiated an illegal foreclosure process relating to Plaintiff's Property, and NDSC thereafter recording a Notice of Default ("NOD2").

125.     Due to the dispute as to the rights and interests of the parties to the Subject Property, Plaintiff requests that the Court declare the rights of the parties in this matter.  Plaintiff requests that the Court enforce these rights with the issuance of injunctions or restraining orders as may be

necessary to place the parties in their proper position with respect to their interests, if any, in the Subject Property.

**PRAYER**

**WHEREFORE**, Plaintiff prays for judgment against the Defendants and each of them as hereinafter set forth:

1.    For an order voiding the Notice of Default and Election to Sell Under Deed of Trust ("NOD2");

2.    For judgment that Plaintiff is the rightful holder of title to the property and that Defendants, each of them, have no estate, right, title or interest in the Subject Property;

3.    For a judgment forever enjoining Defendants, and each of them, from claiming any estate, right, title or interest in the subject property.

4.    For an order that there was never any legal re-assignment of the full and unencumbered legal interest in both the Note and Deed of Trust from LEHMAN to any Defendant herein or any entity;

5.    For an order or judgment that none of the named Defendants have any legal rights in either the Note or DOT, deeming said instruments as VOID and cancelling said instruments;

6.    For an order compelling said Defendants, and each of them, to undo the illegal foreclosure process;

7.    For an order or judgment that the ADOT2, ADOT3 and ADOT4, Substitutions of Trustee ("SOT1" and "SOT2", respectively), and the second Notice of Default ("NOD2") are each defective, fraudulent documents and must be cancelled and removed from the public records in the Santa Cruz County Recorder's Office as VOID documents and that necessary steps are taken to execute a full deed of reconveyance of the Deed of Trust in favor of Plaintiff;

8.    For an Order that the Defendants have no standing and legal right to re-institute any foreclosure proceedings against Plaintiff's real property;

9.    For a declaration that the foreclosure by Defendants against Plaintiff's real property is illegal and said wrongful foreclosure process be unwound by Defendants.

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.      Verified Complaint

1

2       10.     Plaintiff further requests the court to issue an Order for Defendants, and each of them,

3   to remove and cure all reports based upon fraudulent documents Defendants have made to all

4   Credit Reporting Agencies, which are derogatory to Plaintiff's credit standing.

5       11.     For a finding that Defendants, and each of them, have been unjustly enriched in an

6   amount according to proof and that the same, with interest at the legal rate, shall be reimbursed to

7   Plaintiff.

8       12.     For general, compensatory and special damages, including attorney's fees and costs

9   according to proof; and

10      13.     For and all further relief as this court deems fair, just and proper.

11

12      DATED:  November 4, 2015            LAW OFFICES OF MARK W. LAPHAM

13                                          _____

14                                          Mark Lapham. Esq.
                                            Attorney for Plaintiff
15                                          PENNYSLINGER HILLS

16

17

18

19

20

21

22

23

24

25

26

27

28

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.      Verified Complaint

1

## **<u>VERIFICATION</u>**

2

3        I, PENNY SLINGER HILLS, am the Plaintiff in the above-entitled action. I have read the

4   foregoing Verified Complaint and know the contents thereof.   The same is true of my own

5   knowledge except as to those matters stated on information and belief, and as to them I believe them

6   to be true.

7

8        I declare under penalty of perjury under the laws of the State of California that the foregoing is

9   true and correct and that this declaration was executed at Boulder Creek, California.

10

11   Dated:  November 5, 2015

12                                                    //s/ Penny /Slinger Hills_____
                                                     PENNY SLINGER HILLS
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Penny Hills v. Mortgage Electronic Registration Systems, Inc., a Delaware Corporation et al.        Verified Complaint