UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENNY SLINGER HILLS,<br><br>    Plaintiff,<br><br>    v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC, et al.,<br><br>    Defendants. | Case No. 15-cv-05108-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Docket Nos. 13, 19 |

Plaintiff Penny Slinger Hills has filed suit against Defendants Mortgage Electronic Registration Systems, Inc. ("MERS"); CitiMortgage, Inc. ("Citi"); and National Default Servicing Corporation ("NDS"), as trustee for the Bank of New York ("BONY"), which is in turn the trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-24A. Ms. Hills has asserted claims for, *inter alia*, wrongful foreclosure, quiet title, fraud, and violation of California Business & Professions Code § 17200. Currently pending before the Court are two motions to dismiss, one filed by MERS, Citi, and the BONY[1] and the other filed by NDS.

At the hearing on the motions, Ms. Hills conceded that she had no valid claims pled against NDS. Accordingly, the Court hereby **GRANTS** NDS's motion to dismiss. The dismissal is with prejudice.

As for the motion to dismiss filed by the remaining defendants, the Court has considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel. For the reasons stated below, the Court shall **GRANT** that motion to dismiss as well. The dismissal is

---

[1] Although the BONY has moved to dismiss, it is technically not named as a defendant in the lawsuit.

1  with prejudice.

## I. FACTUAL & PROCEDURAL BACKGROUND

In her first amended complaint ("FAC"), Ms. Hills alleges as follows.

Ms. Hills owns certain real property located in Boulder Creek, California. *See* FAC ¶ 6. On or about May 20, 2003, Ms. Hills obtained a $1.102 mortgage loan from PCM Financial Services. *See* FAC ¶ 15 & Ex. 1 (promissory note). The loan was secured with the real property, as reflected in the deed of trust. *See* FAC ¶ 15 & Ex. 2 (deed of trust). The deed of trust reflects on its face that Ms. Hills is the borrower and PCM the lender. The deed of trust also provides that the trustee for the deed of trust is Old Republic Title Company. *See* FAC, Ex. 2 (deed of trust). MERS is not mentioned anywhere in the deed of trust (*e.g.*, as a nominal beneficiary). *See* FAC, Ex. 2 (deed of trust). *See generally Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 267 (2011) (explaining how MERS typically operates; noting that "[m]embers of the MERS System assign limited interests in the real property to MERS, which is listed as the grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights[;] [t]he notes may thereafter be transferred among members without requiring recordation in the public records").

On or about August 22, 2003, an assignment of the deed of trust was recorded. *See* FAC ¶ 16 & Ex. 3 (assignment). The assignment reflects that PCM assigned to Lehman Brothers Bank, FSB, "all beneficial interest" under the deed of trust, "TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under staid Deed of Trust." FAC, Ex. 3 (assignment).

According to Ms. Hills, the above deed of trust and assignment are legitimate. *See* FAC ¶ 13. However, Ms. Hills maintains that assignments that were purportedly made **thereafter** are invalid such that none of the defendants has an interest in or may foreclose on the real property at issue. Those assignments are as follows.

- On or about January 24, 2006, an assignment of deed of trust was recorded. The assignment was made by **Lehman to MERS**. It covered "all beneficial interest" in the deed of trust "[t]ogether with the note or notes therein described or referred to, in said

1  Deed of Trust, the money due and to become due thereon with interest, and all rights
2  accrued or to accrue under said Deed of Trust."[2]  FAC, Ex. 4 (assignment).
3  • On or about September 6, 2012, an assignment of deed of trust was recorded.  The
4  assignment was made by **MERS to Citi**.  It covered the deed of trust but (unlike the
5  assignment above) did not expressly mention the promissory note.[3]  *See* FAC, Ex. 11
6  (assignment).  This, however, does not necessarily mean that the promissory note was not
7  assigned.  Assignments of promissory notes do not need to be recorded.  *See Herrera v.*
8  *Federal National Mortgage Assn.*, 205 Cal. App. 4th 1495, 1506 (2012) ("Since the
9  assignment of the debt (the promissory note), as opposed to the security (the DOT),
10 commonly is not recorded, the lender could have assigned the note to the beneficiary in an
11 unrecorded document not disclosed to plaintiffs.").
12 • On or about March 18, 2014, an assignment of deed of trust was recorded.  The assignment
13 was made by **Citi to the BONY**, as trustee for the Structured Asset Securities Corporation
14 Mortgage Pass-Through Certificates, Series 2003-24A.  It covered the deed of trust but
15 (similar to above) did not expressly mention the promissory note.  *See* FAC, Ex. 12
16 (assignment).  The BONY subsequently made a substitution of trustee that replaced the
17 original trustee on the deed of trust (Old Republic) with NDS.  *See* FAC, Ex. 15
18 (substitution of trustee, recorded on June 24, 2015).  NDS then issued a notice of default
19 on behalf of the BONY.[4]  *See* FAC, Ex. 16 (notice of default, recorded on July 7, 2015).

---

[2] In the FAC, Ms. Hills asserts that the assignment was not actually executed by a Lehman employee but rather by an employee of Aurora Loan Services.  *See* FAC ¶ 20.  This assertion seems to be incorrect.  The assignment, on its face, was signed by a Lehman employee and her signature was then notarized by an Aurora employee.  In the context of notarizing, the Aurora employee provided her signature but she did not, as suggested by Ms. Hills, sign on the Lehman employee's behalf.

[3] *Compare Debrunner v. Deutsche Bank Nat'l Trust Co.*, 204 Cal. App. 4th 433, 442 (2012) (taking note of language in assignment of deed of trust indicating that the deed of trust was being assigned *together* with the promissory note).

[4] Prior to this, a notice of default was recorded in October 2014 but that notice of default was rescinded in January 2015.  *See* Defs.' RJN, Exs. 7-8 (notice of default and notice of rescission).

3

As indicated above, Ms. Hills has provided copies of the above documents as attachments to her FAC. She has also attached to her FAC additional documents, including a letter, dated March 3, 2010, from Citi to Ms. Hills. In the letter, Citi responded to an inquiry from Ms. Hills about who the owner of her mortgage loan was. Citi informed Ms. Hills that the owner of her mortgage loan was the BONY and that Citi was the servicer of the loan.[5] *See* FAC, Ex. 9 (letter). Citi's claim that the BONY was the owner of the loan – as of March 2010 – is somewhat confusing because, just a few months later, in May 2010, Citi entered into a loan modification agreement with Ms. Hills in which Citi identified itself (and not the BONY) as the lender.[6] *See* FAC, Ex. 10 (loan modification agreement).

In any event, the critical question is why the purported assignments from Lehman to MERS, MERS to Citi, and Citi to the BONY are not valid.

According to Ms. Hills, the assignment from **Lehman to MERS** in 2006 was not valid because Lehman purported to give all beneficial interest in the deed of trust (as well as the promissory note) to MERS but MERS has represented in other litigation – more specifically, before the Nevada Supreme Court in or about 2005 – that it does not purchase or sell notes and deeds of trust. *See* FAC ¶¶ 21-22 (quoting Nevada Supreme Court opinion, in which court stated that (1) "'MERS argues that it does not acquire mortgage loans and is therefore not a mortgage banker under § 45-702(6) because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members'" and (2) "'MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes'").

Ms. Hills suggests that this invalid assignment infected the succeeding assignments. She also claims that the assignment from **MERS to Citi** in 2012 was invalid because the MERS

---

[5] According to Ms. Hills, just a few months earlier, in December 2009, Citi represented to her on the phone that the owner of the mortgage loan was Aurora Loan Services. *See* FAC ¶ 26.

[6] MERS was also a party to the loan modification agreement. It was identified as the mortgagee.

4

1  employee who signed the assignment was actually "an employee of CITI at the time said
2  document was executed." FAC ¶ 37.
3       Finally, Ms. Hills asserts that the assignment from **Citi to the BONY** in 2014 was invalid
4  because the assignment was in effect made to a securitized trust but, under the Pooling and Service
5  Agreement ("PSA") applicable to that trust, any transfer of property into the trust had to take place
6  by the closing date of July 30, 2003. *See* FAC ¶ 41.
7       According to Ms. Hills, she has made payments in good faith to avoid default, including a
8  payment of $217,622.88 in or about December 29, 2014. *See* FAC ¶ 53. Ms. Hills also alleges
9  that she "stands willing and able to pay any alleged arrearages to the *actual* Real Party In Interest,
10 should they come forward and substantiate their claim with proof that they are the Real Property
11 In Interest of Plaintiff's Note and DOT." FAC ¶ 61 (emphasis in original).
12      Based on, *inter alia*, the above allegations, Ms. Hills has asserted the following claims for
13 relief:
14 (1)   Wrongful foreclosure.
15 (2)   Quiet title.
16 (3)   Fraud by deceit (against Citi only).
17 (4)   Cancellation of written instruments (including the original note and deed of trust,
18        assignments of deed of trust, etc.).
19 (5)   Quasi-contract for restitution based on unjust enrichment (against Citi and MERS only).
20 (6)   Violation of § 17200.
21 (7)   Declaratory relief.

## II.   DISCUSSION

A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim for relief.

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

5

> reasonable inference that the defendant is liable for the misconduct alleged." The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory.

*Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

B.   Chain of Title[7]

The heart of Ms. Hills's case is that MERS, Citi, and/or the BONY do not own the promissory note and/or deed of trust for the real property at issue and therefore cannot foreclose.

   1.   Lehman to MERS

As noted above, Ms. Hills contends that the assignment from Lehman to MERS in 2006 was not valid because MERS was purportedly given all beneficial interest in the deed of trust, as well as the promissory note, but MERS has represented in other litigation (more specifically, before the Nevada Supreme Court in or about 2005) that it does not purchase or sell notes and deeds of trust. This argument lacks merit.

First, Ms. Hill has failed to cite any authority for the proposition that a party's representation made in one court is a judicial admission (binding or not) in another court.

Second, even if one could assign some probative value to the representations MERS made before the Nevada court, that does not thereby mean that Ms. Hills has alleged enough to give rise to a *plausible* claim that no legally valid assignment could have been made from Lehman to MERS. What MERS did in 2005 may have changed by the time Lehman made the assignment to MERS in 2006. Moreover, even if MERS was given all beneficial interest in the deed of trust and promissory note, that does not mean that it thereby maintained all of that interest – *i.e.*, it could have subsequently divested itself of interests such that it was in effect a nominal beneficiary

---

[7] The Court takes note that Defendants have challenged all of Ms. Hills's claims, other than the claim for fraud, on the ground that she has failed to tender the debt owed. The Court need not address this argument because, as discussed below, there is a more fundamental problem with Ms. Hills's case – *i.e.*, she has failed to allege an improper chain of title.

6

(consistent with the representations made to the Nevada court). Furthermore, even if MERS's practice is not to purchase notes but to only serve as a nominal beneficiary, Ms. Hills has not established MERS is legally barred from taking ownership so as to nullify any such transfer.

Ms. Hills makes much of the fact that the original deed of trust did not mention MERS in any way (*e.g.*, as a nominal beneficiary), but that fact is immaterial. The bottom line is that, apparently, MERS was made a beneficiary (indeed, a true beneficiary, at least for a time) because Lehman conveyed to MERS "all beneficial interest" in the deed of trust "[t]ogether with the note or notes therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust." FAC, Ex. 4 (assignment). Of course, even if MERS was made a true beneficiary, that does not preclude the possibility that MERS subsequently divested itself of some of the assigned interests such that it effectively became a nominal beneficiary.

Ms. Hills also makes much of the fact that she has in her possession an allonge ("[s]aid Allonge was received by Plaintiff from Defendants after submitting a Qualified Written Request to Defendants," Docket No. 23 (Opp'n at 9)), showing that PCM endorsed the promissory note over to Lehman. But, similar to above, even if the allonge may have some probative value, it is not enough to give rise to a *plausible* claim that the subsequent alleged assignments were invalid. The allonge is consistent with Ms. Hills's position that there were no valid assignments after PCM made the assignment to Lehman but consistency is not enough under *Iqbal* and *Twombly*. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (stating that, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief"). Moreover, if that really is Ms. Hills's position – *i.e.*, that Lehman is the true owner of the promissory note – then Lehman should have been brought into this litigation as a potentially interested party. *See generally* Fed. R. Civ. P. 19 (addressing required joinder of parties).

    2.    <u>MERS to Citi</u>

Ms. Hills asserts that the assignment from MERS to Citi in 2012 was invalid because the MERS employee who signed the assignment was actually "an employee of CITI at the time said

1   document was executed." FAC ¶ 37. The problem here is that there is nothing in the complaint to
2   support this naked claim by Ms. Hills. And even if the person who signed the assignment was in
3   fact an employee of Citi, that does not automatically preclude her from being an employee of
4   MERS as well. Ms. Hills suggests that the person who signed the assignment could not have been
5   an employee of MERS because the person signed in Missouri and MERS has no business offices
6   there. *See* FAC ¶ 37. But even if MERS has no business offices in Missouri, that is not enough to
7   give rise to a *reasonable* inference that the person who signed therefore could not have been an
8   employee of MERS.

9   To the extent Ms. Hills questions Citi's ownership of the loan because it made claims to
10  her that other companies owned the loan (*e.g.*, Aurora or the BONY), that argument is no stronger.
11  Citi may have given inaccurate information about ownership but that does not change the chain of
12  title.

13  3.   Citi to the BONY

14  Finally, Ms. Hills contends that the assignment from Citi to the BONY in 2014 was invalid
15  because the assignment was in effect made to a securitized trust but, under the PSA applicable to
16  that trust, any transfer of property into the trust had to take place by the closing date of July 30,
17  2003. *See* FAC ¶ 41.

18  Citi and the BONY challenge this argument on the ground that Ms. Hills has no standing to
19  challenge any noncompliance with the PSA. *See* Mot. at 12-13. Citi and the BONY concede that
20  at least one court has held to the contrary, *see Glaski v. Bank of Am.*, 218 Cal. App. 1079, 1097-98
21  (2013) (finding that plaintiff had sufficiently stated a claim for wrongful foreclosure by alleging
22  that the deed of trust was transferred to a securitized trust after the pool's closing date), but assert
23  that the *Glaski* court is in the clear minority. *See, e.g.*, *Neal v. Select Portfolio Serv'g, Inc.*, No.
24  5:15-cv-03212-EJD, 2016 U.S. Dist. LEXIS 772, at *9 (N.D. Cal. Jan. 5, 2016) (noting that
25  "*Glaski* represents a distinct minority view regarding a borrower's standing to enforce or assert
26  claims based on alleged violations of a trust's PSA, and this district has uniformly rejected *Glaski*
27  as persuasive authority"); *see also In re Residential Capital, LLC*, No. 12-12020 (MG), 2015
28  Bankr. LEXIS 2139, at *44-45 (S.D.N.Y. June 30, 2015) (stating that "the Second Circuit's

1    decision in *Rajamin v. Deutsche Bank National Trust Company*, 757 F.3d 79 (2d Cir. 2014), casts
2    doubt on the validity of the *Glaski* holding" as, there, the court "affirmed the district court's
3    judgment of dismissal with respect to mortgage borrowers' claims asserted against certain
4    securitization trusts on the ground that the borrowers lacked standing to assert claims relating to
5    securitization of their loans").

6    In response, Ms. Hills argues that, even though *Glaski* may represent the minority position,
7    the California Supreme Court has yet to opine on the issue. Ms. Hills also suggests that, because
8    the California Supreme Court has taken up for review the issue of whether a borrower has standing
9    to challenge noncompliance with a PSA, *see Yvanova v. New Century Mortg.Corp.*, 331 P.3d 1275
10   (Cal. 2014) (asking the question whether, "[i]n an action for wrongful foreclosure on a deed of
11   trust securing a home loan, does the borrower have standing to challenge an assignment of the
12   note and deed of trust on the basis of defects allegedly rendering the assignment void"), this Court
13   should stay proceedings to get the benefit of the state court's decision.

14   The Court, however, is not inclined to stay proceedings. Notably, *Yvanova* itself was a
15   post-foreclosure case, and most cases that the California Supreme Court has deferred pending
16   disposition of *Yvanova* are also post-foreclosure cases. *But see Keshtgar v. U.S. Bank, N.A.*, 226
17   Cal. App. 4th 1201 (2014), *superseded by grant of review*, 334 P.3d 686 (Cal. 2014) (pre-
18   foreclosure case). The instant case, in contrast, is a pre-foreclosure case. As such, there is an
19   additional argument raised by Citi and the BONY in the instant case that will likely not be
20   addressed in *Yvanova* or the other post-foreclosure cases – *i.e.*, that "'there is no state law
21   preemptive right of action to determine standing to foreclose, or claim for damages for wrongful
22   initiation of foreclosure proceedings absent a completed sale.'" *Gieseke v. Bank of Am. ,N.A.*, No.
23   13-cv-04772-JST, 2014 U.S. Dist. LEXIS 23794, at *7 (N.D. Cal. Feb. 23, 2014) (dismissing
24   claim for wrongful foreclosure where "Plaintiffs alleged nothing unlawful about the foreclosure
25   process beyond the argument that the allegedly deficient securitization process deprived
26   Defendants of their interest in the property"). A number of courts have so held; the main
27   authority cited for this proposition is *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th
28   1149 (2011). The *Gomes* court explained that, "'[b]ecause of the exhaustive nature of this

1    [nonjudicial foreclosure] scheme, California appellate courts have refused to read any additional
2    requirements into the non-judicial foreclosure statute.'" *Id.* at 1154.  "By asserting a right to bring
3    a court action to determine whether the owner of the Note has authorized its nominee to initiate
4    the foreclosure process, [plaintiff] is attempting to interject the courts into this comprehensive
5    nonjudicial scheme." *Id.*

6    Hence, regardless of the debtor's standing to challenge an assignment, courts are generally
7    not authorized to intervene in the nonjudicial foreclosure process established by California law.
8    As explained in *Gomes*, "the policy behind nonjudicial foreclosure [is] providing a quick,
9    inexpensive and efficient remedy." *Id.*  If the Court were to allow Ms. Hills to proceed with her
10   PSA challenge, it would likely get embroiled in complex trust issues (in deciding the validity of
11   the assignment which was made after the PSA closing date, a matter which may turn on, *e.g.*, an
12   interpretation of another state's law on trusts (*see, e.g.*, *Glaski*, 218 Cal. App. 4th at 1096-97
13   (interpreting New York law in finding that transfer to trust post-closing date was void); this would
14   undermine the speedy resolution intended by the nonjudicial foreclosure process.

15   Second, although *Gomes* carved out an exception and indicated that a plaintiff could bring
16   a preemptive wrongful foreclosure action in court (*i.e.*, go outside of the nonjudicial foreclosure
17   process) so long as he or she had a "*specific factual basis* for alleging that the foreclosure was not
18   initiated by the correct party," *id.* at 1156 (emphasis in original), Ms. Hills has not pled sufficient
19   factual allegations to place her case within that exception.  Here, there is no risk *e.g.* of multiple
20   creditors claiming conflicting ownership of her note and deed of trust.  Ms. Hills does not dispute
21   that Citi intended to put her note and/or deed of trust into the trust for which the BONY is trustee;
22   nor has she alleged BONY did not intend to accept the note and/or deed of trust.  Rather, she has
23   pled a "technicality" which she contends nullifies the intended assignment – *i.e.*, that the transfer
24   of the note and/or deed of trust was not timely made under the PSA.  That contention stands in
25   contrast to situations in which the exception to the *Gomes* bar has been applied – situations where
26   there were specific facts indicating that the foreclosing party was not the real owner of the note.
27   *See, e.g.*, *Gates v. LLP Mortg., Inc.*, No. CV 13-8737 DSF (PLAx), 2013 U.S. Dist. LEXIS
28   183638, at *6 (C.D. Cal. Dec. 30, 2013) (recognizing exception in *Gomes* and indicating that a

10

forged assignment could potentially meet that exception but plaintiff's "bald assertion that the assignment was forged, absent other supporting allegations, is not a specific factual basis"); *Bergman v. Bank of Am., N.A.*, No. C-13-00741 JCS, 2013 U.S. Dist. LEXIS 153173, at *15, 76 (N.D. Cal. Oct. 23, 2013) (concluding that plaintiffs met the *Gomes* exception because they alleged that bank had sold the deed of trust and therefore a substitution of trustee executed by the bank thereafter was void); *Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 966-67, 974 (N.D. Cal. 2012) (holding that claim for wrongful foreclosure was adequately pled where allegation was that Chase could not have obtained deed of trust through WaMu asset sale because deed of trust had previously sold by WaMu through a securitization).  The Court is not persuaded that a kind of technicality alleged here is sufficient to justify an exemption from the otherwise applicable bar on judicial intervention into the nonjudicial foreclosure process.

Accordingly, the Court concludes that Ms. Hills has failed to allege any cognizable problem with the chain of title.  Her complaint, therefore, must be dismissed.

### III.  CONCLUSION

For the foregoing reasons, the Court grants both NDS's motion to dismiss as well as MERS, Citi, and the BONY's motion to dismiss.  The dismissal of claims is with prejudice.  As to NDS, Ms. Hills has conceded that she has no viable claim.  As to the remaining defendants, Ms. Hills has failed to articulate any plausible basis for an amendment.

The Clerk of the Court is instructed to enter judgment in accordance with the above and close the file in this case.

This order disposes of Docket Nos. 13 and 19.

**IT IS SO ORDERED**.

Dated: February 5, 2016

_____
EDWARD M. CHEN
United States District Judge

11